UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X
MICHAEL J. COLES,

                                  DOCKET NO.:

                      Plaintiff,

        -against-

COUNTY OF MONROE, COUNTY OF MONROE
DEPARTMENT OF HUMAN SERVICES, COUNTY     **COMPLAINT**
OF MONROE DEPARTMENT OF HUMAN
SERVICES COMMISSIONER CORINDA
CROSSDALE, COUNTY OF MONROE
DEPARTMENT OF HUMAN SERVICES
CASEWORKER TRISHA KAPLIN, COUNTY OF
MONROE DEPARTMENT OF HUMAN SERVICES
CASEWORKER JOHN DOES #1-5 (fictitiously     **Jury Trial Demanded**
named), individually, COUNTY OF MONROE
SHERIFF'S DEPARTMENT, COUNTY OF MONROE
SHERIFF ANDREW DELYSER, COUNTY OF
MONROE SHERIFF'S DEPARTMENT OFFICER
JOHN DOES #1-10, (fictitiously named), individually,

                      Defendants.
--------------------------------------------------------------------- X

       Plaintiff, MICHAEL J. COLES, by and through his attorneys, THE RUSSELL

FRIEDMAN LAW GROUP, LLP, complaining of the defendants, COUNTY OF MONROE,

COUNTY OF MONROE DEPARTMENT OF HUMAN SERVICES, COUNTY OF MONROE

DEPARTMENT OF HUMAN SERVICES COMMISSIONER CORINDA CROSSDALE,

COUNTY OF MONROE DEPARTMENT OF HUMAN SERVICES CASEWORKER TRISHA

KAPLIN, COUNTY OF MONROE DEPARTMENT OF HUMAN SERVICES

CASEWORKER JOHN DOES #1-5, COUNTY OF MONROE SHERIFF'S DEPARTMENT,

COUNTY OF MONROE SHERIFF ANDREW DELYSER, COUNTY OF MONROE

SHERIFF'S DEPARTMENT OFFICER JOHN DOES #1-10, (fictitiously named), individually,

(hereinafter, collectively "Defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for the deprivation of Plaintiff's civil rights, committed by Defendants while acting in concert and under color of state law, in violation of Plaintiff's rights, liberties, and immunities as guaranteed to him by reason of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution as well as pendent state law claims and claims for negligence pursuant to New York State Law. This Court is authorized to grant relief under 42 U.S.C. §§ 1983 and 1988.

## JURISDICTION

2.     Jurisdiction in this matter is invoked in accordance with 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Plaintiff further invokes the supplemental jurisdiction of the Court to hear and decide claims arising out of the pendent state claims pursuant to 28 U.S.C. § 1376(a).

## VENUE

3.     Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the County of Monroe; the actual place of employment of all of the individual Defendants is Monroe County in the Western District of New York, and Monroe County is within the jurisdiction of the Western District of New York.  The events surrounding this lawsuit occurred in Monroe County, in the Western District of New York.  Additionally, Plaintiff resides within the County of Monroe in the Western District of New York.

## PARTIES

4.     Plaintiff, MICHAEL J. COLES (hereinafter, "Coles" or "Plaintiff"), is a resident of the United States who lives within the Western District of New York.

5.     Defendant, COUNTY OF MONROE (hereinafter, "County"), is a municipal

subdivision of the State of New York, duly existing by reason of and pursuant to the laws of the State of New York.

5. Defendant, COUNTY OF MONROE DEPARTMENT OF HUMAN SERVICES (hereinafter, "DHS"), is a subdivision of the County, duly existing by reason of and pursuant to the laws of the County of Monroe and State of New York and encompasses Child Protective Services (hereinafter, "CPS") Foster Care, Adoption, Adult Protective Services (hereinafter, "APS"), and other family services teams for residents within the County with offices located at 111 Westfall Road, Rochester, New York 14620.

6. Defendant, COUNTY OF MONROE DEPARTMENT OF HUMAN SERVICES COMMISSIONER CORINDA CROSSDALE (hereinafter, "DHS Crossdale") is the Commissioner of Monroe County DHS who is being sued in her individual capacity and is an employee of the County. Upon information and belief, at all relevant times described herein, DHS Crossdale was acting under color of state law within the scope of her employment as a DHS caseworker employed by the County.

7. Defendant, COUNTY OF MONROE DEPARTMENT OF HUMAN SERVICES CASEWORKER TRISHA KAPLIN (hereinafter, "DHS Kaplin") is a DHS caseworker who is being sued in her individual capacity and is an employee of the County. Upon information and belief, at all relevant times described herein, DHS Kaplin was acting under color of state law within the scope of her employment as a DHS caseworker employed by the County.

8. Defendant, COUNTY OF MONROE DEPARTMENT OF HUMAN SERVICES CASEWORKER JOHN DOES #1-5 (hereinafter, collectively "DHS John Does") are DHS caseworkers who are being sued in their individual capacities and are employed by the County. Upon information and belief, at all relevant times described herein, DHS John Does were acting

under color of state law within the scope of their employment as caseworkers employed by the County.

9.      Defendant COUNTY OF MONROE SHERIFF'S DEPARTMENT (hereinafter, "MCSD") is an agency of the County, duly existing by reason of and pursuant to the laws of the County of Monroe and State of New York with offices located at 130 Plymouth Avenue, #100, Rochester, New York 14614

10.      Defendant, COUNTY OF MONROE SHERIFF ANDREW DELYSER (hereinafter, "MCSD Delyser") is an individual officer of the Monroe County Sheriff's Department who is being sued in his individual capacity and is employed by the County.  Upon information and belief, at all relevant times described herein, MCSD Delyser was acting under color of state law within the scope of his employment as Sheriff employed by the County.

11.      Defendant, COUNTY OF MONROE SHERIFF'S DEPARTMENT OFFICER JOHN DOES #1-10 (hereinafter, "MCSD John Does") are individual officers of the Monroe County Sheriff's Department who are being sued in their individual capacities and are employed by the County.  Upon information and belief, at all relevant times described herein, the MCSD John Does were acting under color of state law within the scope of their employment as Sheriffs employed by the County.

**NATURE OF THE CASE**

12.      This is an action seeking recovery for deprivation of Plaintiff Coles' civil rights guaranteed to him under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and state law claims for negligence committed by the above-named municipal Defendants.

13.       Plaintiff bases this action upon the release of his information in violation, and in

Plaintiff's reliance of, a promise of confidentiality pursuant to his cooperation with Defendants in an investigation wherein he was not a suspect. Defendants' release of Plaintiff's information, which was in direct violation of the agreement of confidentiality, and New York State law, directly and proximately caused Plaintiff to be shot multiple times by a suspect of the underlying investigation on October 19, 2017, at approximately 2:00 p.m. Plaintiff sustained serious injuries, including but not limited to, three gun-shot wounds as a direct result of Defendants' actions, which required subsequent hospitalizations and surgeries.

## STATEMENT OF RELEVANT FACTS

14. Plaintiff is a citizen of the United States of America and is currently 37 years of age. Plaintiff is a resident of the County of Monroe.

15. On or about June 12, 2017, Plaintiff's 10-year-old son (hereinafter, referred to as "JSG") was left alone and unsupervised, with his 6-year-old half-brother (hereinafter, referred to as "WM") at 35 Fitch Street, Apartment 2, Churchville, New York, by his mother Dalfona S. Grayson (hereinafter, "Grayson") and Grayson's boyfriend Walter Morse, Jr. (hereinafter, "Morse").

16. That day, Grayson went to work and left Morse to supervise and care for JSG and WM. Apparently, Morse had to "run some errands" and left 10-year-old JSG and 6-year-old WM alone in his residence.

17. Grayson and Morse, by their own admissions, have in the past left the two children alone in the home, unbeknownst to Plaintiff.

18. While alone, JSG ingested a tiny white substance contained in a small plastic bag. JSG was found unresponsive, by his 6-year-old brother WM, lying facedown in the hallway with the bag containing the white-substance near him.

DH/D217056/FL2633

19.     Upon discovering his brother, WM ran to a neighbor's home. The neighbor then called 911 to report the emergency.

20.     Upon information and belief, an ambulance responded to the residence at 35 Fitch Street, Rochester, New York and provided medical attention. Upon information and belief, JSG was transported to Strong Memorial Hospital, Rochester, New York (hereinafter, "Strong Hospital").

21.     Soon thereafter, Plaintiff learned that JSG was taken to Strong Hospital. The following day, on June 13, 2017, JSG passed-away. Soon thereafter, it was determined that JSG ingested fentanyl and/or a fentanyl derivative and possibly other narcotics found in the home.

22.     Upon information and belief, on or about June 12, 2017, New York State Central Register ("SCR") was contacted by an unknown individual to report the above-specified child's abuse/neglect/maltreatment (the "Report").

23.     SCR accepted and registered the Report of the above-specified child's abuse/neglect/maltreatment. Upon information and belief, SCR assigned the Report to DHS's CPS unit. Additionally, on information, SCR also referred the Report to MCSD.

24.     Upon information and belief, CPS assigned the Report to Case Worker DHS Kaplin. Upon information and belief, MCSD Delyser and/or MCSD John Does were assigned to investigate the death of JSG.

25.     Sometime after the death of Plaintiff's son, Kaplin contacted Plaintiff, who was informed by DHS Kaplin that she was conducting a CPS investigation into the death of JSG. She further informed Plaintiff, that while Plaintiff was a person named in the Report, Plaintiff was not the subject of the Report. Rather, Grayson and Morse were the subjects of the Report.

26.     DHS Kaplin requested that Plaintiff assist her with her investigation and provide

information. Plaintiff was very hesitant and told DHS Kaplin that he feared for his safety and feared retaliation from Morse because of his vicious propensity. In fact, Plaintiff expressly stated that he would not cooperate unless his identity and information were kept confidential and could not be released under any circumstances. DHS Kaplin assured and promised Plaintiff that any information he could provide would be confidential.

27.     In fact, DHS Kaplin further advised Plaintiff that, under New York Social Services Law § 422, CPS was not permitted to disclose the name of sources to the Report. DHS Kaplin affirmatively represented that it would be a violation of Plaintiff's right to release his information or identity as the source of the information. DHS Kaplin further referred Plaintiff to the DHS website to assure him that her representations on nondisclosure were accurate.

28.     The DHS website further represents that CPS is not permitted to disclose the identity of sources to the Report. Specifically, the website states as follows:

- When you make a report to Child Protective Services (CPS), your name is held in strictest confidence. CPS CANNOT tell the child's family the identity of the person who made the report unless you give consent to have your name revealed.

- A judge may order CPS to release information about your identity in a court proceeding.

- Rarely, reporters are required to testify in court, in which case your identity would become known.

See https://www.dorightbykids.org/am-i-a-mandated-reporter/what-about-my-confidentiality/

29.     Plaintiff justifiably relied on DHS Kaplin's repeated promises and representations and provided the information he had to DHS Kaplin that day.

30.     Plaintiff justifiably relied on the representations concerning confidentiality

contained on the DHS website.

31.     Later that day, MCSD Delyser and/or MCSD John Does contacted Plaintiff and requested his assistance with the criminal investigation. Plaintiff again expressed his concern fearing for his safety and retaliation from Morse. In fact, Plaintiff expressly stated that he would not cooperate unless his identity and information were kept confidential and could not be released under any circumstances. MCSD Delyser and/or MCSD John Does assured and promised Plaintiff that any information he could provide would be confidential and his identity would always remain unknown to the public and especially to Morse.

32.     Plaintiff then had a series of in-person meetings with MCSD Delyser and/or MCSD John Does wherein he cooperated and provided information to facilitate the investigation into his son's death.

33.     At each conversation, Plaintiff expressly communicated his concern to DHS Kaplin, MCSD Delyser and MCSD John Does that any breach of confidentiality would lead to significant harm, including threats to his life by Morse. Plaintiff told DHS Kaplin, MCSD Delyser and MCSD John Does that he knew that Morse is a known narcotics dealer with a violent demeanor that lives right up the street, in close proximity to Plaintiff, and that any breach of confidentiality could foreseeably cause him harm.

34.     Each time Plaintiff spoke with Defendants, he expressed his concerns, and DHS Kaplin, MCSD Delyser and MCSD John Does expressly promised and gave repeated assurances to Plaintiff that his name would be kept strictly confidential and would not be disclosed under any circumstance in communications both in person and on the telephone.

35.     It was only after those promises and assurances from DHS, DHS Kaplin, MCSD Delyser and MCSD John Does that Plaintiff's cooperation would be kept confidential and any

information provided would not be disclosed, that Plaintiff agreed to assist DHS Kaplin, MCSD Delyser and MCSD John Does with their investigation.

36.     During Plaintiff's conversations with DHS Kaplin and DHS John Does, Plaintiff was assured that Morse would never be able to harm him. Specifically, Plaintiff was informed that the only way Morse could find out Plaintiff's name was after he was arrested in connection with formal court proceedings.

37.     During Plaintiff's conversations with MCSD Delyser and MCSD John Does, Plaintiff was assured that Morse would never be able to harm him. Specifically, Plaintiff was informed that the only way Morse could find out Plaintiff's name was after he was arrested in connection with formal court proceedings.

38.     Defendants assured Plaintiff that they would contact Plaintiff if his identity was ever revealed to anyone, and especially to Morse.

39.     DHS Kaplin and MCSD John Does had direct knowledge that Morse was dangerous. DHS Kaplin and MCSD John Does had knowledge that it was reasonably foreseeable and likely that any disclosure of Plaintiff's information with respect to the investigation would result in substantial harm and/or deadly force against Plaintiff and/or his family.

40.     Plaintiff justifiably relied on their repeated assertions, including the representation that it was illegal to release his identity in connection with the Report, each time he communicated with Defendants that his information and identity would not be disclosed to anyone under any set of circumstances, especially Morse. It was only after each assurance that Plaintiff agreed to provide information for the investigation.

41.     But for the repeated assurances and promises by Defendants, Plaintiff would not have cooperated with Defendants' investigation and would have taken affirmative measures to

DH/D217056/FL2633

protect himself from Morse.

42.     Defendants affirmatively assumed a duty to take all measures to ensure that Plaintiff's information was kept confidential through their repeated promises and assurances to Plaintiff, in return for his cooperation in an investigation to which he was not a suspect.

43.     On or about October 19, 2017, DHS Kaplin and/or DHS John Does and/or MCSD Delyser and/or MCSD John Does disclosed to Morse Plaintiff's involvement and cooperation with the CPS and criminal investigation into the death of JSG.

44.     Specifically, Defendants caused the Report to be published to Morse with Plaintiff's information thereby revealing his cooperation with Defendants. Defendants failed to advise Plaintiff that his identity was known to Morse.

45.     On October 19, 2017 at approximately 2:00 p.m. Plaintiff, while leaving a store on Orchard Street, Rochester, New York, was brutally attacked by Morse. The intent of Morse was to shoot and kill Plaintiff after Morse had learned that Plaintiff was cooperating and assisting in the CPS and criminal investigation through the actions of Defendants.

46.     DHS Kaplin, DHS John Does, MCSD Delyser and MCSD John Does were aware, acted in deliberate indifference to Plaintiff's rights, and were negligent, while Morse, upon discovering that Plaintiff provided information to Defendants, sought out Plaintiff and shot him several times with a .40 pistol. Plaintiff received multiple shot wounds in each thigh as a result and suffered a myriad of health issues as a result of the shooting, requiring multiple hospitalizations and surgeries.

47.     Plaintiff's shooting and injuries occurred as a direct result of Defendants' failure(s) to provide him with the necessary protection and/or intervene at a time when they were aware that Plaintiff was in immediate physical danger – both within and outside their presence,

DH/D217056/FL2633

including but not limited to, timely and proper police assistance and security, timely and proper administrative action by Defendants, including investigation.

48.     Plaintiff's shooting and injuries occurred as a direct result of Defendants' failure(s) to provide him with the confidentiality promised and relied upon by Plaintiff, as well as the necessary and timely protection upon disclosure of same to Morse.

49.     Defendants were aware that Plaintiff justifiably relied upon Defendants' promises and assurances, given the close proximity of his residence and Morse.

50.     Defendants unlawfully created, harbored, supported, condoned, and facilitated dangerous and life-threatening circumstances for Plaintiff, which directly and ultimately led to and proximately caused Plaintiff's serious, life-threatening injuries.

51.     Defendants acted with wanton or deliberate indifference to Plaintiff's rights by failing to conceal his information from their deliberate disclosure of the Report to Morse. Plaintiff relied upon Defendants' representations that his information would be kept confidential because of the substantial, foreseeable harm if the information were disclosed or made public.

52.     In fact, the very purpose of the New York Social Service Law § 422 confidentiality provisions, memorialized on DHS' website as it pertains to the identity of a cooperating witness, exists to prevent the very violent acts which were perpetrated against Plaintiff by Morse.

53.     DHS Kaplin, DHS John Does, MCSD Delyser and MCSD John Does, with knowledge of the dangerous situation faced by Plaintiff, caused and/or allowed Morse to continue to stalk, menace, torture, harass, annoy, injure, physically and verbally threaten, and physically and verbally endanger the life and well-being of Plaintiff. DHS Kaplin, DHS John Does, MCSD Delyser and MCSD John Does took no action to safeguard Plaintiff prior to and

including the time Plaintiff was brutally attacked by Morse.

54.     Defendants did in fact subject Plaintiff to the above-stated abuses and recklessly, indifferently, intentionally and/or negligently caused Plaintiff to be shot several times by Morse, in wanton or deliberate indifference to Plaintiff's rights and the agreement to keep his information confidential.

55.     As a direct result of Defendants' actions, Plaintiff was tortured, stalked, menaced, maimed, harassed, annoyed, injured, threatened, mutilated and shot, and Defendants are therefore liable for causing expenses, and special damages, including but not limited to: substantial legal fees, medical bills, lost income, loss of employment, loss of employment potential, loss of liberty, and other costs/expenses.

56.     Pursuant to New York State General Municipal Law, Coles served a Notice of Claim upon Monroe County within the 90-day statutory period, giving Notice of these claims to the extent required by Law.

57.     Pursuant to Section 50-h of the New York State General Municipal Law, Coles appeared for a hearing that was conducted on behalf of County.

### AS AND FOR PLAINTIFF'S
### FIRST CLAIM FOR RELIEF FOR VIOLATIONS OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS FOR DELIBERATE INDIFFERENCE TO PLAINTIFF'S RIGHTS AGAINST ALL DEFENDANTS

58.      Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

59.     Defendants DHS Kaplin, DHS Crossdale, DHS John Does, MCSD Delyser and MCSD John Does entered into an agreement with Plaintiff wherein he would provide

information for the investigation in return for complete confidentiality that his identity and information would not be disclosed to Morse.

60.     Defendants assumed a duty by promising to Plaintiff that his information and identity would not be compromised under any set of circumstances.

61.     Upon information and belief, the County and MCSD actively promotes a confidential informant program in order to recruit and encourage individuals with information concerning criminal activity to report the same to the MCSD

62.     In criminal society, an informant is utterly despised and any informant whose identity becomes known to the subjects of his information or their accomplices is at grave risk of imminent physical harm, including death. This fact is well known to the County, DHS and MCSD Defendants.

63.     Through their confidential informant program, the County, DHS and MCSD Defendants created the danger of criminal retribution for individuals participating in the program as informants. In addition, confidential informants are in a special relationship with the County, DHS and MCSD Defendants in that, if that relationship is discovered, it could result in a threat to the life of the informant.

64.     DHS Kaplin, DHS Crossdale, DHS John Does, MCSD Delyser and MCSD John Does knew to a reasonable degree of certainty that any release of Plaintiff's information would result in foreseeable harm to Plaintiff at the hands of Morse.

65.     New York Social Services Law and Monroe County CPS guidelines provide that it is unlawful to disseminate the identity of a cooperating witness to the public, absent specific enumerated circumstances that are not present here.

66.     Specifically, the very purpose of New York Social Service Law § 422

confidentiality provisions, memorialized on DHS' website as it pertains to the identity of a cooperating witness, exist to prevent the very violent acts which were perpetrated against Plaintiff by Morse.

67.     There was direct contact between Plaintiff and Defendants. In addition, Plaintiff justifiably relied on DHS Kaplin, DHS Crossdale, DHS John Does, MCSD Delyser and MCSD John Does' repeated assertions each time he communicated with Defendants that his information and identity would not be disclosed under any set of circumstances. It was only after each assurance that Plaintiff agreed to provide information for the investigation.

68.     Plaintiff justifiably relied on Defendants' affirmative undertaking that his information would be kept confidential.

69.     Defendants directly caused Plaintiff's identity to become compromised by releasing the Report to Morse that contained Plaintiff's identity and the information provided. Defendants did not inform Plaintiff that his information and identity had been compromised and were known to Morse.

70.     Defendants were aware, through their conversations with Plaintiff, that Morse was extremely violent and would seek retaliation against Plaintiff if the Report contained Plaintiff's information.

71.     Defendants acted with wanton or deliberate indifference to Plaintiff's rights by failing to conceal his information from their deliberate disclosure of the Report to Morse. Defendants further acted with wanton or deliberate indifference to Plaintiff's rights by failing to advise Plaintiff that his identity was known to Morse as a cooperating witness.

72.     Defendants were aware, through communications with other individuals, that Morse sought to inflict deadly harm on Plaintiff after Defendants' release of the Report.

DH/D217056/FL2633

73.     After the release of the Report, Defendants MCSD Delyser and MCSD John Does reassured Plaintiff that he would be protected.   Specifically, Defendants assured Plaintiff, considerably prior to October 19, 2017, that Morse was going to be arrested and would no longer be a threat to Plaintiff.

74.     Plaintiff justifiably relied on Defendants' assertions that Morse would be in custody and have no ability to cause harm to Plaintiff.

75.     On October 19, 2017 at approximately 2:00 p.m. Plaintiff, while leaving a store, on Orchard Street, Rochester, New York, was brutally attacked by Morse. The intent of Morse was to shoot and kill Plaintiff after Morse had learned that Plaintiff was cooperating and assisting in the CPS and criminal investigation through the actions of Defendants.

76.     As a result of Defendants' willing, wanton and recklessly indifferent conduct, Plaintiff's Fifth and Fourteenth Amendment rights were violated and he was unlawfully subject to a dangerous situation directly caused by Defendants' actions and inactions.

77.     It was foreseeable that Defendants' actions, in willingly, recklessly, indifferently, and knowingly failing to protect Plaintiff, deprived Plaintiff of his various Constitutional rights, with callous disregard for the consequences of their actions and otherwise acted under the color of law to deprive Plaintiff of his rights and privileges in violation of New York State Constitution and 42 U.S.C. § 1983.

78.     As a proximate result of Defendants' intentional, wanton and deliberately indifferent actions,  Plaintiff was caused to suffer serious physical injuries, including three gun wounds to the lower portion of his body causing repeated surgeries and hospitalization, injury to his reputation, fear for his safety, PTSD, other special damages, and has suffered great mental anguish, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN

DH/D217056/FL2633

MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

## AS AND FOR PLAINTIFF'S
## SECOND CLAIM FOR RELIEF FOR VIOLATIONS OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS FOR FAILURE TO PROTECT AGAINST DEFENDANT DHS, DHS KAPLIN, DHS CROSSDALE, DHS JOHN DOES

79.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

80.    Sometime after the death of Plaintiff's son, JSG, DSH Kaplin contacted Plaintiff, who was informed by DSH Kaplin that she was conducting a CPS investigation into the death of JSG. She further informed Plaintiff that, while Plaintiff was a person named in the Report, Plaintiff was not the subject of the Report. Rather, Grayson and Morse were the subjects of the Report.

81.    DSH Kaplin requested that Plaintiff assist her with her investigation and provide information. Plaintiff was very hesitant and told DSH Kaplin that he feared for his safety and feared retaliation from Morse because of his vicious propensity.

82.    In fact, Plaintiff expressly stated that he would not cooperate unless his identity and information were kept confidential and could not be released under any circumstances.  DSH Kaplin assured and promised to Plaintiff that any information he could provide would be confidential.

83.    In addition, in order to convince Plaintiff to cooperate, DSH Kaplin further advised Plaintiff that, under New York Social Services Law § 422 and CPS rules and regulations, it is unlawful to disclose the name of sources to the Report. DHS' website further memorialize that it is unlawful to release the information of a cooperating witness.

84. DHS Kaplin affirmatively represented that it would be a violation of Plaintiff's right to release his information or identity as the source of the information.

85. Plaintiff justifiably relied on DHS Kaplin's repeated promises and representations and provided the information he had to DHS Kaplin that day.

86. It was only after those promises and assurances from DHS Kaplin that Plaintiff's cooperation would be kept confidential and any information provided would not be disclosed, that Plaintiff agreed to assist the Defendants.

87. DHS Kaplin, DHS Crossdale and DHS John Does had direct knowledge that Morse was dangerous.

88. DHS Kaplin, DHS Crossdale and DHS John Does had knowledge that it was reasonably foreseeable and likely that any disclosure of Plaintiff's information with respect to the investigation would result in substantial harm and deadly force against Plaintiff and/or his family.

89. Defendants affirmatively assumed a duty to take all measures to ensure that Plaintiff's information was kept confidential through their repeated promises and assurances to Plaintiff, in return for his cooperation in an investigation to which he was not a suspect.

90. Plaintiff justifiably relied on Defendants' repeated assertions each time he communicated with Defendants that his information and identity would not be disclosed under any set of circumstances. It was only after each assurance that Plaintiff agreed to provide information for the investigation.

91. Upon information and belief, on or about October 19, 2017, in direct violation of Plaintiff's rights and the promises made to him throughout the investigation, DHS Kaplin, DHS Crossdale and/or DHS John Does disclosed to Morse Plaintiff's involvement and cooperation

DH/D217056/FL2633

with the CPS and criminal investigation into the death of JSG.

92.     As a direct result of Defendants' actions, on October 19, 2017 at approximately 2:00 p.m., Plaintiff, while leaving a store, on Orchard Street, Rochester, New York, was brutally attacked by Morse. The intent of Morse was to shoot and kill Plaintiff after Morse had learned that Plaintiff was cooperating and assisting in the CPS and criminal investigation through the actions of Defendants.

93.     Morse's intentions and actions were known to Defendants and/or were reasonably foreseeable under the circumstances.

94.     It was foreseeable that Defendants' actions, in willingly, recklessly, indifferently, and knowingly failing to protect Plaintiff's identity, deprived Plaintiff of his various Constitutional rights, with callous disregard for the consequences of their actions and otherwise acted under the color of law to deprive Plaintiff of his rights and privileges in violation of New York State Constitution, New York State Social Services Law and 42 U.S.C. § 1983.

95.     As a proximate result of Defendants' intentional, wanton and deliberately indifferent actions,  Plaintiff was caused to suffer serious physical injuries, including three gun wounds to the lower portion of his body causing repeated surgeries and hospitalization, injury to his reputation, fear for his safety, PTSD, other special damages, and has suffered great mental anguish, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

## AS AND FOR PLAINTIFF'S
## THIRD CLAIM FOR RELIEF FOR VIOLATIONS OF PLAINTIFF'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS FOR FAILURE TO PROTECT AGAINST DEFENDANT MCSD, MCSD DELYSER AND MCSD JOHN DOES

96.     Plaintiff repeats and realleges each and every allegation contained in those

paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

97.     Shortly after JSG's death, MCSD Delyser and/or MCSD John Does contacted Plaintiff and requested his assistance with the criminal investigation. Plaintiff again expressed his concern fearing for his safety and retaliation from Morse.

98.     Plaintiff expressly stated, at each meeting, that he would not cooperate unless his identity and information were kept confidential and could not be released under any circumstances. MCSD Delyser and/or MCSD John Does assured and promised to Plaintiff that any information he could provide would be confidential and his identity would always remain unknown.

99.     After the release of the Report, Defendants MCSD Delyser and MCSD John Does reassured Plaintiff that he would be protected after the release of the Report. Specifically, Defendants assured Plaintiff, considerably prior to October 19, 2017, that Morse was going to be arrested and would no longer be a threat to Plaintiff, lulling Plaintiff into believing that Morse was not a threat to his safety.

100.    On October 19, 2017 at approximately 2:00 p.m., Plaintiff, while leaving a store on Orchard Street, Rochester, New York, was brutally attacked by Morse. The intent of Morse was to shoot and kill Plaintiff after Morse had learned that Plaintiff was cooperating and assisting in the CPS and criminal investigation through the actions of Defendants.

101.    Defendants MCSD Delyser and MCSD John Does had actual knowledge that Morse was seeking Plaintiff out for retribution pursuant to the release of the Report.

102.     Plaintiff justifiably relied on Defendants' promises and assurances that Morse was going to be imminently placed in Defendants' custody and would pose no threat to his life,

thereby lulling Plaintiff into inaction.

103.     Defendants MCSD Delyser and MCSD John Does failed in their duty to protect Plaintiff, placing him in a life-threatening situation on October 19, 2017 at 2:00 p.m. wherein Plaintiff sustained serious life-threatening injuries after being shot by Morse.

104.     Prior to the time of the shooting, Defendants had knowledge that Morse was seeking to harm Plaintiff as a result of the release of the Report through communications with other members in the community who had knowledge of Morse's intentions.

105.     Prior to the time of the shooting, Defendants gave assurances to Plaintiff that he would be protected and that Morse would not be able to harm him.

106.     As a result of Defendants' failure to protect, Plaintiff's Fifth and Fourteenth Amendment rights were violated.

107.     As a proximate result of Defendants' intentional and deliberately indifferent actions,  Plaintiff was caused to suffer serious physical injuries, including three gun wounds to the lower portion of his body causing repeated surgeries and hospitalization, injury to his reputation, fear for his safety, PTSD, other special damages, and has suffered great mental anguish, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

## AS AND FOR PLANITIFF'S
## FOURTH CLAIM FOR RELIEF FOR FAILURE TO SUPERVISE AND FAILURE TO TRAIN (1983) AGAINST DEFENDANTS COUNTY, DHS AND DHS CROSSDALE

108.     Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

109.     Defendants County, DHS and DHS Crossdale, as Commissioner of DHS, were responsible for supervising, overseeing, and controlling their subordinates in DHS.

110.     County, DHS and DHS Crossdale intentionally failed to adequately supervise, control, oversee, train and/or monitor DHS Kaplin and DHS John Does to adequately take affirmative measures to conceal the identity of confidential informants or would-be informants.

111.     County, DHS and DHS Crossdale intentionally failed to adequately supervise, control, oversee, train and/or monitor DHS Kaplin and DHS John Does to adequately recognize when the confidentiality or the identity of a confidential informant or would-be confidential informant has been compromised.

112.     County, DHS and DHS Crossdale intentionally failed to adequately supervise, control, oversee, train and/or monitor DHS Kaplin and DHS John Does to adequately provide protection and safety for confidential informants or would-be confidential informants whose confidentiality has been compromised.

113.     Upon information and belief, County, DHS and DHS Crossdale were aware that DHS Kaplin and/or DHS John Does were releasing the Report that contained Plaintiff's information.

114.     Upon information and belief, County, DHS and DHS Crossdale were aware that the release of the Report would pose a significant, foreseeable threat to Plaintiff's life, but failed to take adequate measures to resolve the wrong.

115.     Upon information and belief, it was the policy, practice and custom of County, DHS, and DHS Crossdale to allow DHS Kaplin and/or DHS John Does to ignore agreements of confidentiality in violation of Plaintiff's Fifth and Fourteenth Amendments.

116.    Upon information and belief, it was the policy, practice and custom of County, DHS and DHS Crossdale to allow DHS Kaplin and/or DHS John Does to release confidential information of the informants when they issue the Report and serve same on the suspect of an investigation without legal justification.

117.    Upon information and belief, it was the policy, practice and custom of County, DHS, and DHS Crossdale to allow DHS Kaplin and/or DHS John Does to coerce individuals with promises of confidentiality and other misrepresentations to cooperate with their investigations, the cooperation of which is known to Defendants to likely and foreseeably endanger the life of the informant if the information and/or identity were disclosed.

118.    Upon information and belief, Defendants failed to adequately train their employees to recognize constitutional violations and/or intervene to prevent the constitutional violations of their employees and/or peers.

119.    County, DHS and DHS Crossdale, through their active promotion and use of informants, created a danger to the life of Plaintiff and was in a special relationship with Plaintiff. County, DHS and DHS Crossdale's failure to provide proper and adequate training and instruction to its personnel, including DHS Kaplin and DHS John Does was in reckless indifference to the danger to Plaintiff's life that Defendants created and which arose because of the special relationship with Plaintiff.

120.    As a proximate result of Defendants' actions,  Plaintiff was caused to suffer serious physical injuries, including three gun wounds to the lower portion of his body causing repeated surgeries and hospitalization, injury to his reputation, fear for his safety, PTSD, other special damages, and has suffered great mental anguish, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus

punitive damages and attorney's fees.

**AS AND FOR PLAINTIFF'S**
**FIFTH CLAIM FOR RELIEF FOR FAILURE TO SUPERVISE AND FAILURE TO**
**TRAIN (1983) AGAINST DEFENDANTS COUNTY AND MCSD**

121.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

122.    Defendants County and MCSD were responsible for supervising, overseeing, and controlling their subordinates in the MCSD.

123.    County and MCSD intentionally failed to adequately supervise, control, oversee, train and/or monitor MCSD Delyser and MCSD John Does.

124.    County and MCSD intentionally failed to adequately supervise, control, oversee, train and/or monitor MCSD Delyser and MCSD John Does to adequately recognize when the confidentiality or the identity of a confidential informant or would-be confidential informant has been compromised.

125.    County and MCSD intentionally failed to adequately supervise, control, oversee, train and/or monitor MCSD Delyser and MCSD John Does to adequately provide protection and safety for confidential informants or would-be confidential informants whose confidentiality has been compromised.

126.    Upon information and belief, County and MCSD were aware that MCSD Delyser and MCSD John Does were releasing the Report that contained Plaintiff's information.

127. Upon information and belief, County, MCSD Delyser and MCSD John Does were aware that the release of the Report would pose a significant, foreseeable threat to Plaintiff's life, but failed to take adequate measures to resolve the wrong.

128. After the Report was released to Morse, MCSD Delyser and MCSD John Does knew that Morse was seeking to exact revenge on Plaintiff.

129. After the Report was released to Morse, MCSD Delyser and MCSD John Does assured Plaintiff that Morse would be imminently arrested and posed no threat to Plaintiff's safety.

130. Upon information and belief, it was the policy, practice and custom of County and MCSD allow the MCSD Defendants to ignore agreements of confidentiality in violation of Plaintiff's Fifth and Fourteenth Amendments.

131. Upon information and belief, it was the policy, practice and custom of County and MCSD to allow the MCSD Defendants to release confidential information of the informants when they issue the Report and serve same on the suspect of an investigation without legal justification.

132. Upon information and belief, it was the policy, practice and custom of County and MCSD to allow the MCSD Defendants to coerce individuals with promises of confidentiality and protection to cooperate with their investigations, the cooperation of which is known to Defendants to likely and foreseeably endanger the life of the informant if the information and/or identity were disclosed.

133. Upon information and belief, it was the policy, practice and custom of County and MCSD to allow the MCSD Defendants to make promises to protect and misrepresentations regarding the severity of a known threat to coerce informants to continue to cooperate with their

DH/D217056/FL2633

investigations, the cooperation of which is known to Defendants to likely and foreseeably endanger the life of the informant if the information and/or identity were disclosed.

134.   Upon information and belief, Defendants failed to adequately train their employees to recognize constitutional violations and/or intervene to prevent the constitutional violations of their employees and/or peers.

135.   County and MCSD failed to ensure that Plaintiff would not be in the vicinity of Morse, instead assuring Plaintiff that Morse would be arrested. County and MCSD lulled Plaintiff into inaction through constant assurances that there was no imminent threat to his safety.

136.   As a proximate result of Defendants' actions,  Plaintiff was caused to suffer serious physical injuries, including three gun wounds to the lower portion of his body causing repeated surgeries and hospitalization, injury to his reputation, fear for his safety, PTSD, other special damages, and has suffered great mental anguish, all to Plaintiff's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

### AS AND FOR PLAINTIFF'S
### SIXTH CLAIM FOR RELIEF AGAINST
### COUNTY (MONELL CLAIM)

137.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

138.   Upon information and belief, it was the custom, policy and practice of Defendants to induce informants to cooperate with Defendants under the expressed agreement that the information would be confidential and not disclosed under any circumstance.

DH/D217056/FL2633

139.    Upon information and belief, it was the custom, policy and practice of Defendants to induce informants to cooperate with Defendants under the expressed agreement that the information would be confidential and not disclosed under any circumstance by further representing that it would be illegal to relieve the identity of an informant pursuant to New York Social Services Law.

140.    Employees of DHS and/or MCSD, such as the individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

141.    Employees of DHS and/or MCSD, such as the individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, that they would receive no reprimand or be punished for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

142.    By failing to supervise, train and reprimand DHS Caseworkers and MCSD Officers, such as the individual Defendants in this action, County caused the injuries to Plaintiff through the actions and inactions of the individual Defendants.

143.    By maintaining a *de facto* policy of automatic indemnification, County caused the injuries to Plaintiff through the actions and inactions of the individual Defendants.

144.    Upon information and belief, it was the custom, policy and practice of County to authorize and permit certain DHS Caseworkers and MCSD Officers, including the individual Defendants, to cause breach agreements of confidentiality of their informants, contrary to the New York Social Services Law and their own internal guidelines.

DH/D217056/FL2633

145.    Upon information and belief, it was the custom, policy and practice of County to encourage and cause constitutional violations by DHS Caseworkers and MCSD Officers employed by the County, including the violations of Plaintiff's constitutional rights, to further their own investigation by the individual Defendants at the peril of Plaintiff.

146.    County's failure to take action against its DHS Caseworkers and/or MCSD Officer's involved in this incident, and in other similar incidents, was part of a custom, practice and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff and other confidential informants in the same and/or similar circumstances.

147.    As authorized representatives of Defendant County, the DHS Caseworkers' conduct of illegally breaching the confidentiality of informants, such as Plaintiff, placing them in a life-threatening situation, and making false assurances of protection, constituted a custom, policy and policies which renders Defendant County liable to Plaintiff as a "Person" acting under the color of state law.

148.    These customs, policies and practices enforced by Defendants were the moving force, proximate cause, and/or affirmative link behind the conduct causing Plaintiff's injuries.

149.    Defendant County is therefore liable for violations of Plaintiff's constitutional rights as caused by its/their employees, as described in more detail in the paragraphs herein, and Plaintiff has suffered considerable damages therefrom.

150.    As a proximate result of Defendant's customs, policies and practices for creating an environment that tolerates, encourages, and condones such constitutional violations, Plaintiff was caused to suffer serious physical injuries, including three gun wounds to the lower portion of his body causing repeated surgeries and hospitalization, injury to his reputation, fear for his safety, PTSD, other special damages, and has suffered great mental anguish, all to Plaintiff's

damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00), plus punitive damages and attorney's fees.

### AS AND FOR PLAINTIFF'S
### SEVENTH CLAIM FOR RELIEF FOR NEGLIGENCE AGAINST
### ALL DEFENDANTS

151.    Plaintiff repeats and realleges each and every allegation contained in those paragraphs of the Complaint marked and numbered previously and/or herein with the same force and effect as if more fully set forth at length below.

152.    Defendants, through their active promotion and use of informants, entered into a special relationship with Plaintiff.

153.    Defendants, through their active promotion and use of informants, assumed an affirmative duty to take all measures to not disclose the identity of Plaintiff to Morse, or any others involved in the investigation.

154.    Defendants represented to Plaintiff that his identity and information would remain confidential, and that it was illegal to divulge such information pursuant to New York Social Services Law and CPS regulations.

155.    Defendants had direct knowledge that the release of Plaintiff's information in connection with this investigation would cause imminent harm to Plaintiff. It was foreseeable that the release of Plaintiff's identity would cause Morse to seek out revenge.

156.    Defendants created a danger to the life of Plaintiff by releasing his information to Morse, in violation of the agreement, promises and assurances by Defendants.

157.    After the information was released to Morse and prior to the date Plaintiff was viciously attacked by Morse, Plaintiff had a series of in-person meetings with Defendants, who assured him that Morse would be imminently arrested and that his life was not in danger.

DH/D217056/FL2633

158.    Plaintiff justifiably relied on Defendants' information that Morse was to be imminently arrested and that there was no threat to his safety.

159.    Defendants lulled Plaintiff into inaction through their repeated assurances that Morse was no longer a threat to him.

160.    On October 19, 2017 at approximately 2:00 p.m., Plaintiff, while leaving a store on Orchard Street, Rochester, New York, was brutally attacked by Morse. The intent of Morse was to shoot and kill Plaintiff after Morse had learned that Plaintiff was cooperating and assisting in the CPS and criminal investigation through the actions of Defendants.

161.    As a proximate result of Defendants' actions,  Plaintiff was caused to suffer serious physical injuries, including three gun wounds to the lower portion of his body, causing repeated surgeries and hospitalization, injury to his reputation, fear for his safety, PTSD, other special damages, and has suffered great mental anguish causing damages, all to 's damage, in an amount to be determined at trial but not less than TEN MILLION DOLLARS ($10,000,000.00).


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Michael J. Coles respectfully requests judgment against Defendants as follows:

A.      Under the First Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees.

B.      Under the Second Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees.

C.      Under the Third Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees.

D.      Under the Fourth Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus attorney's fees.

E.      Under the Fifth Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees.

F.      Under the Sixth Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS plus punitive damages and attorney's fees.

G.      Under the Seventh Claim for Relief, in the amount of TEN MILLION ($10,000,000.00) DOLLARS.

H.      For compensatory damages against all Defendants in an amount to be determined at trial but in no event less than TEN MILLION DOLLARS ($10,000,000.00);

I.      Such other and further relief as the Court deems just and proper.


Dated: Lake Success, New York
        January 14, 2019

                                    Respectfully Submitted,
                                    THE RUSSELL FRIEDMAN LAW GROUP, LLP
                                    *Attorneys for Michael J. Coles*

                        By:     _____/S/Charles Horn_____
                                    Charles Horn
                                    3000 Marcus Avenue, Suite 2E03
                                    Lake Success, New York 11042
                                    Tel: 516.355.9696

DH/D217056/FL2633